**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **COLONY INSURANCE COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**ARCHITECTURAL SURFACES GROUP, LLC,**<br><br>Defendant. | **Case No. 1:26-cv-02436** |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Colony Insurance Company ("Colony") files this Original Complaint for Declaratory Judgment, and, upon information and belief, shows the following:

## I. INTRODUCTION

1. This is an insurance coverage dispute in which Colony seeks a judicial determination of its rights and obligations, if any, under two primary policies and an excess policy issued to Select Interior Concepts, Inc. ("SIC"), with Architectural Surfaces Group, LLC ("ASG") included as an additional named insured by endorsement, for ongoing litigation in over 500 lawsuits arising out of ASG's distribution of artificial stone products.

2. As alleged in the underlying complaints, ASG distributes natural and artificial stone products for use in kitchen and bathroom countertops.

3. ASG's stone products allegedly contained silica concentrations between 3% and 95%.

4. When fabricated and installed, the complaints allege that ASG's products produce large amounts of respirable crystalline silica dust and other toxic constituents.

5. The underlying complaints are brought by contractors, spouses of contractors, or personal representatives of deceased contractors who fabricated and installed ASG's products.

6. During the fabrication and installation process, ASG products allegedly expel dust containing silica and other toxic metals.

7. The underlying plaintiffs allegedly inhaled this dust containing silica and other toxic metals, which led to illness and increased risk of disease.

8. ASG has sought insurance coverage from Colony for the underlying lawsuits.

9. Both the primary policies and the excess policy issued by Colony include a "Silica or Silica-Related Dust Exclusion" that bars coverage for injury or damage arising, in whole or in part, out of the alleged, threatened, or suspected inhalation of "silica" or "silica-related dust."

10. The injuries alleged in the underlying complaints arose from the alleged inhalation of "silica" or "silica-related dust."

11. Moreover, both the primary policies and the excess policy issued by Colony include a "Total Pollution Exclusion" that bars coverage for injury or damage that would not have occurred, in whole or in part, but for the discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

12. The injuries alleged in the underlying complaints would not have occurred but for the dispersal, seepage, migration, release or escape of pollutants—namely, the release of silica, silica dust, and other toxins by the fabrication of ASG products into the air.

13. Accordingly, Colony is entitled to a judicial declaration that coverage for the underlying actions is barred in its entirety by the Silica and Silica-Related Dust Exclusion and the Total Pollution Exclusion.

## II. PARTIES

14. Plaintiff Colony is incorporated in Nebraska with its principal place of business in Chicago, Illinois. It is therefore a citizen of Nebraska and Illinois.

15. Defendant ASG is a Delaware limited liability company, and its sole member is SIC. SIC is a Delaware corporation with its principal place of business in Boynton Beach, Florida. Defendant ASG is, therefore, a citizen of Delaware and Florida.

## III. JURISDICTION AND VENUE

16. The Court has personal jurisdiction over ASG because it maintains business offices in Texas and the primary and excess policies were issued to SIC in Texas with Texas-specific terms and disclosures.

17. The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

18. Defendant ASG has tendered the underlying lawsuits to Colony and is seeking more than $75,000 in defense and indemnity from Colony under its policies. In the underlying lawsuits, the plaintiffs seek to recover damages in excess of $75,000 for their past and future medical expenses, loss of earnings, loss of future earnings capacity, pain, suffering, and inconvenience, and punitive damages.

19. This is an action for declaratory judgment, filed pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, *et seq*. An actual case and controversy of a justiciable nature exists between Plaintiff and Defendant, involving the rights, duties, and obligations, if any, of the parties under insurance policies issued by Colony to ASG.

20. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this lawsuit occurred in this District.

## IV. THE POLICIES

**The 19-20 Primary Policy**

21. Colony issued Policy No. 103 GL 0028545-00 to SIC, for the Policy Period of April 15, 2019 to April 15, 2020 (the "19-20 Primary Policy"). A true and correct copy of the 19-20 Primary Policy is attached as **Exhibit 1**.

22. By endorsement, ASG was added to the 19-20 Primary Policy as a named insured.

23. By endorsement, the 19-20 Policy Period was extended to June 15, 2020.

24. The 19-20 Primary Policy's Commercial General Liability Coverage Part ("CGL Coverage Part") includes $1 million each occurrence and $2 million aggregate limits of liability. *See* 19-20 Primary Policy, CGL Coverage Part Declarations, as amended by Endorsement No. 2.

25. Subject to all the stated terms, conditions and limitations, the 19-20 Primary Policy's Coverage A – Bodily Injury and Property Damage Liability Insuring Agreement affords specified coverage for those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" that takes place during the policy period and is caused by an "occurrence." *See* 19-20 Primary Policy, CGL Coverage Part, Section I.1.

26. The 19-20 Primary Policy defines "bodily injury" to mean bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. *See* 19-20 Primary Policy, CGL Coverage Part, Section V.3.

27. "Occurrence" is defined to mean an accident, including continuous or repeated exposure to substantially the same general harmful conditions. *See* 19-20 Primary Policy, CGL Coverage Part, Section V.13.

28. Coverage A of the 19-20 Primary Policy is subject to "Endorsement - Silica or Silica-Related Dust Exclusion," which provides that coverage does not apply to:

> "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

19-20 Primary Policy, CGL Coverage Part, Section I.2, as amended by the Silica or Silica-Related Dust Exclusion Endorsement (the "19-20 Primary Silica Exclusion").

29. "Silica" is defined as "silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds." 19-20 Primary Policy, CGL Coverage Part, Section V, as amended by the 19-20 Primary Silica Exclusion.

30. "Silica-related dust" is defined as a "mixture or combination of silica and other dust or particles." 19-20 Primary Policy, CGL Coverage Part, Section V, as amended by the 19-20 Primary Silica Exclusion.

31. Coverage A of the 19-20 Primary Policy is subject to a "Total Pollution Exclusion with a Building Heating, Cooling and Dehumidifying Equipment Exception and a Hostile Fire Exception" (the "19-20 Primary Total Pollution Exclusion") which provides that coverage does not apply to:

> "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

19-20 Primary Policy, CGL Coverage Part, Section I.2.f, as amended by the 19-20 Primary Total Pollution Exclusion Endorsement.

32. The 19-20 Primary Total Pollution Exclusion does not apply to:

> (a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or

dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

(b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire occurred or originated:

(i) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(ii) At any premise, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

19-20 Primary Policy, CGL Coverage Part, Section I.2.f, as amended by the 19-20 Primary Total Pollution Exclusion.

33. The 19-20 Primary Policy defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." 19-20 Primary Policy, CGL Coverage Part, Section V.15.

**The 20-21 Primary Policy**

34. Colony issued Policy No. 103 GL 0028545-01 to SIC, for the Policy Period of June 15, 2020 to June 15, 2021 (the "20-21 Primary Policy"). A true and correct copy of the 20-21 Primary Policy is attached as **Exhibit 2**.

35. By endorsement, ASG was added to the 20-21 Primary Policy as a named insured.

36. By endorsement, the 20-21 Policy Period was extended to August 16, 2021.

37. The 20-21 Primary Policy's CGL Coverage Part includes $1 million each occurrence and $2 million aggregate limits of liability. *See* 20-21 Primary Policy, CGL Coverage Part, Declarations.

38. Subject to all of the stated terms, conditions and limitations, the 20-21 Primary Policy's Coverage A – Bodily Injury and Property Damage Liability Insuring Agreement affords specified coverage for those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" that takes place during the policy period and is caused by an "occurrence." *See* 20-21 Primary Policy, CGL Coverage Part, Section I.1.

39. The 20-21 Primary Policy defines "bodily injury" to mean bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. *See* 20-21 Primary Policy, CGL Coverage Part, Section V.3.

40. "Occurrence" is defined to mean an accident, including continuous or repeated exposure to substantially the same general harmful conditions. *See* 20-21 Primary Policy, CGL Coverage Part, Section V.13.

41. Coverage A of the 20-21 Primary Policy is subject to "Endorsement - Silica or Silica-Related Dust Exclusion," which provides that coverage does not apply to:

> "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

20-21 Primary Policy, CGL Coverage Part, Section I.2, as amended by the Silica or Silica-Related Dust Exclusion Endorsement (the "20-21 Primary Silica Exclusion").

42. "Silica" is defined as "silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds." 20-21 Primary Policy, CGL Coverage Part, Section V, as amended by the 20-21 Primary Silica Exclusion.

43. "Silica-related dust" is defined as a "mixture or combination of silica and other dust or particles." 20-21 Primary Policy, CGL Coverage Part, Section V, as amended by the 20-21 Primary Silica Exclusion.

44. Coverage A of the 20-21 Primary Policy is subject to an endorsement captioned "Total Pollution Exclusion with a Building Heating, Cooling and Dehumidifying Equipment Exception and a Hostile Fire Exception" which provides that coverage does not apply to:

> "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

20-21 Primary Policy, CGL Coverage Part, Section I.2.f, as amended by the Total Pollution Exclusion with a Building Heating, Cooling and Dehumidifying Equipment Exception and a Hostile Fire Exception Endorsement (the "20-21 Primary Total Pollution Exclusion").

45. The 20-21 Primary Total Pollution Exclusion does not apply to:

> (a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or
>
> (b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire occurred or originated:
>
> (i) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or
>
> (ii) At any premise, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

20-21 Primary Policy, CGL Coverage Part, Section I.2.f, as amended by the 20-21 Primary Total Pollution Exclusion Endorsement.

46. The 20-21 Primary Policy defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." 20-21 Primary Policy, CGL Coverage Part, Section V.15.

47. Together, the 19-20 Primary Policy and the 20-21 Primary Policy are referred to as the "Primary Policies".

**The Colony Excess Policy**

48. Colony issued Excess Policy No. AR6461278 to SIC for the Policy Period of June 15, 2020 to June 15, 2021 (the "Colony Excess Policy"). A true and correct copy of the Colony Excess Policy is attached as **Exhibit 3**.

49. By endorsement, ASG was added to the Colony Excess Policy as a named insured.

50. By endorsement, the Policy Period was extended to August 16, 2021.

51. The Colony Excess Policy includes $5 million each occurrence and $5 million aggregate limits of liability. *See* Colony Excess Policy, Declarations.

52. Except as otherwise provided, the Colony Excess Policy follows the same provisions, exclusions and limitations as are contained in the "applicable underlying insurance." *See* Colony Excess Policy, Commercial Excess Liability Coverage Form ("Colony Excess Coverage Form").

53. The "applicable underlying insurance" is defined to include the 20-21 Primary Policy and the Allied World Following Form Excess Liability Insurance Policy No. 0311-8098 (the "Allied World Excess Policy"). *See* Colony Excess Policy, Colony Excess Coverage Form and Schedule of Underlying Insurance.

54. The Allied World Excess Policy follows the "warranties, terms, conditions, exclusions and limitations that are contained in the Followed Policy." *See* Allied World Excess

Policy, Section I.A, I.D. A true and correct copy of the Allied World Excess Policy is attached as **Exhibit 4**.

55. The 20-21 Primary Policy is the Followed Policy under the Allied World Excess Policy. *See* Allied World Excess Policy, Declarations, Item 6.

56. Neither the Colony Excess Policy nor the Allied World Excess Policy affords coverage broader than that provided by the 20-21 Primary Policy. *See Colony* Excess Policy, Colony Excess Coverage Form; Allied World Excess Policy, Section I.D.

57. The Colony Excess Policy applies only in excess of the 20-21 Primary Policy and the Allied World Excess Policy. *See* Colony Excess Policy, Declarations, Item 4, and Schedule of Underlying Insurance.

58. The Colony Excess Policy includes an endorsement captioned "Exclusion – Silica or Silica-Related Dust," which provides that the insurance does not apply to:

> "injury or damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

Colony Excess Policy, Section I.2, as amended by the Exclusion – Silica or Silica-Related Dust Endorsement (the "Excess Silica Exclusion") (together, with the 19-20 Primary Silica Exclusion and 20-21 Primary Silica Exclusion, the "Silica Exclusions").

59. "Silica" is defined as "silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds." Colony Excess Policy, Section IV, as amended by the Excess Silica Exclusion.

60. "Silica-related dust" is defined as "a mixture or combination of silica and other dust or particles." Colony Excess Policy, Section IV, as amended by the Excess Silica Exclusion.

61. The Colony Excess Policy includes an endorsement captioned "Total Pollution Exclusion with a Building Heating, Cooling and Dehumidifying Equipment Exception and a Hostile Fire Exception" which provides that the insurance does not apply to "injury or damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time. *See* Colony Excess Policy, Section I.2.c, as amended by the Total Pollution Exclusion with a Building Heating, Cooling and Dehumidifying Equipment Exception and a Hostile Fire Exception Endorsement (the "Excess Total Pollution Exclusion") (together with the 19-20 Primary Total Pollution Exclusion and the 20-21 Primary Total Pollution Exclusion, the "Total Pollution Exclusions").

62. The Excess Total Pollution Exclusion does not apply to:

> (a) "Injury or damage" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or
>
> (b) "Injury or damage" arising out of heat, smoke or fumes from a hostile fire unless that hostile fire occurred or originated:
>
> > (i) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or
> >
> > (ii) At any premise, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, pollutants.

Colony Excess Policy, Section I.2.c, as amended by the Excess Total Pollution Exclusion.

63. The Colony Excess Policy defines "injury or damage" as injury or damage, covered in the "applicable underlying insurance" arising from an "event". *See* Colony Excess Policy, Section IV.5.

64. An "event" is defined as an occurrence, offense, accident or act, to which the "applicable underlying insurance" applies. *See* Colony Excess Policy, Section IV.4.

65. The definition of "pollutants" in the 20-21 Primary Policy also applies to the Colony Excess Policy. *See* Colony Excess Policy, Colony Excess Coverage Form (providing that undefined terms have the same meaning as defined in the "applicable underlying insurance").

66. "Applicable underlying insurance" means the policy or policies of "underlying insurance" that provide underlying coverage or loss that resulted in a claim under the Colony Excess Policy—here, the 20-21 Primary Policy. *See* Colony Excess Policy, Section IV.1.

67. Together, the Primary Policies and the Colony Excess Policy are referred to as the "Policies."

## V. THE UNDERLYING ACTION AND CLAIM FOR COVERAGE

68. Starting in September 2022, ASG has been named as a defendant in numerous lawsuits alleging injuries due to exposure to silica and other toxins arising out of the fabrication of ASG products (the "Silica Suits").

69. Since May 2024, ASG has tendered 582 Silica Suits for coverage under the Policies. A schedule identifying all Silica Suits tendered to Colony to date is attached as **Exhibit 5**.

70. The Silica Suits currently are pending in state courts in California, Arizona, Florida, Kentucky, Oregon, Nevada, and Washington, as well as in the United States District Court for the Northern District of California.

71. The Silica Suits each contain substantially similar allegations regarding ASG's products, the source of injuries to the plaintiff, and the basis for ASG's liability.

72. For representative purposes, attached are true and correct copies of the complaints tendered for the Silica Suits captioned *Naranjo v. All Natural Stone Berkeley, Inc.*, No. 26STCV04307 (Cal. Super. Ct. Feb. 6, 2026) (the "Naranjo Complaint"), attached as **Exhibit 6**; *Cabrera v. 3M Company*, No. 25STCV28922 (Cal. Super. Ct. Sept. 30, 2025) (the "Cabrera Complaint"), attached as **Exhibit 7**; *Sanguinet v. Allied Marble & Granite Inc.*, No. 24-2-15366-7 (Wash. Super. Ct. July 10, 2024) (the "Sanguinet Complaint"), attached as **Exhibit 8**; *Evans v. Alicante Surfaces PVT. LTD*, No. 24CV20629 (Or. Cir. Ct. Apr. 25, 2024) (the "Evans Complaint"), attached as **Exhibit 9**; *Reyes-Gonzalez v. Aaroha Radiant Marble & Granite Slabs*, No. 22STCV31907 (Cal. Super. Ct. Sept. 29, 2022) (the "Reyes-Gonzalez Complaint"), attached as **Exhibit 10**.

73. The Silica Suits allege that ASG manufactured, distributed or supplied natural and artificial stone products for fabrication and installation. *See, e.g.*, Naranjo Complaint, ¶¶ 51, 62, 213; Cabrera Complaint, ¶¶ 58, 69, 220; Sanguinet Complaint, ¶¶ 42, 45; Evans Complaint, ¶¶ 63, 66, 77; Reyes-Gonzalez Complaint, ¶ 51.

74. In each Silica Suit, the plaintiff is either a contractor, spouse of a contractor, or personal representative of a deceased contractor who fabricated and installed ASG products. *See, e.g.*, Naranjo Complaint, ¶¶ 67-78; Cabrera Complaint, ¶¶ 74, 77-86; Sanguinet Complaint, ¶¶ 55, 59; Evans Complaint, ¶¶ 76, 80; Reyes-Gonzalez Complaint, ¶¶ 50-51.

75. During the fabrication process, ASG's products allegedly released airborne silica and other toxic dust. *See, e.g.*, Naranjo Complaint, ¶¶ 77-78, 81-82; Cabrera Complaint, ¶¶ 86, 89-

90; Sanguinet Complaint, ¶¶ 50-55; Evans Complaint, ¶¶ 71-75, 81-82; Reyes-Gonzalez Complaint, ¶¶ 49, 51-52.

76. The Silica Suits allege that the inhalation and exposure to the silica and toxic dust caused injuries such as silicosis, lung disease, and pulmonary fibrosis, as well as led to an increased risk of further diseases such as cancer. *See, e.g.*, Naranjo Complaint, ¶¶ 79-82; Cabrera Complaint, ¶¶ 87-90; Sanguinet Complaint, ¶¶ 62-65; Evans Complaint, ¶¶ 83-86; Reyes-Gonzalez Complaint, ¶¶ 51-52.

77. ASG tendered the Silica Suits to Colony for coverage under the Primary Policies.

78. By letter dated August 20, 2026, Colony advised ASG that no coverage was available under either the Primary Policies or the Colony Excess Policy based on the Silica Exclusions and the Total Pollution Exclusions, with a reservation of rights on the application of other potentially implicated terms in the Policies. A true and correct copy of the August 20, 2026 correspondence is attached as **Exhibit 11**.

## VI. COUNT ONE – REQUEST FOR DECLARATORY RELIEF 19-20 PRIMARY SILICA EXCLUSION

79. Colony incorporates by reference paragraphs 1-78 as if fully set forth herein.

80. Pursuant to the 19-20 Primary Silica Exclusion, the 19-20 Primary Policy does not apply to:

> "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

19-20 Primary Policy, CGL Coverage Part, Section I.2, as amended by the 19-20 Primary Silica Exclusion.

81. The 19-20 Primary Policy defines "silica" as "silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds." 19-20

Primary Policy, CGL Coverage Part, Section V, as amended by the 19-20 Primary Silica Exclusion.

82. The 19-20 Primary Policy defines "silica-related dust" as "a mixture or combination of silica and other dust or particles." 19-20 Primary Policy, CGL Coverage Part, Section V, as amended by the 19-20 Primary Silica Exclusion.

83. The Silica Suits allege "bodily injury" arising, in whole or in part, from alleged inhalation of "silica" or "silica-related dust."

84. Therefore, the 19-20 Primary Silica Exclusion applies to bar all coverage for the Silica Suits under the 19-20 Primary Policy, and as a result Colony has no duty to defend or indemnify ASG or SIC against the claims raised in the Silica Suits.

## VII. COUNT TWO – REQUEST FOR DECLARATORY RELIEF 20-21 PRIMARY SILICA EXCLUSION

85. Colony incorporates by reference paragraphs 1-78 as if fully set forth herein.

86. Pursuant to the 20-21 Primary Silica Exclusion, the 20-21 Primary Policy does not apply to:

> "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

20-21 Primary Policy, CGL Coverage Part, Section I.2, as amended by the 20-21 Primary Silica Exclusion.

87. The 20-21 Primary Policy defines "silica" as "silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds." 20-21 Primary Policy, CGL Coverage Part, Section V, as amended by the 20-21 Primary Silica Exclusion.

88. The 20-21 Primary Policy defines “silica-related dust” as “a mixture or combination of silica and other dust or particles.” 20-21 Primary Policy, CGL Coverage Part, Section V, as amended by the 20-21 Primary Silica Exclusion.

89. The Silica Suits allege “bodily injury” arising, in whole or in part, from alleged inhalation of “silica” or “silica-related dust.”

90. Therefore, the 20-21 Primary Silica Exclusion applies to bar all coverage for the Silica Suits under the 20-21 Primary Policy, and as a result Colony has no duty to defend or indemnify ASG or SIC against the claims raised in the Silica Suits.

## VIII. COUNT THREE – REQUEST FOR DECLARATORY RELIEF EXCESS SILICA EXCLUSION

91. Colony incorporates by reference paragraphs 1-78 as if fully set forth herein.

92. Pursuant to the Excess Silica Exclusion, the Colony Excess Policy does not apply to:

> “injury or damage” arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, “silica” or “silica-related dust”.

Colony Excess Policy, Section I.2, as amended by the Excess Silica Exclusion.

93. The Colony Excess Policy defines “silica” as “silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.” Colony Excess Policy, Section IV, as amended by the Excess Silica Exclusion.

94. “Silica-related dust” is defined as “a mixture or combination of silica and other dust or particles.” Colony Excess Policy, Section IV, as amended by the Excess Silica Exclusion.

95. To the extent the Silica Suits allege “injury or damage”, such arises, in whole or in part, out of the alleged inhalation of, contact with, exposure to, existence of, or presence of “silica” or “silica-related dust.”

96. Therefore, the Excess Silica Exclusion applies to bar all coverage for the Silica Suits under the Colony Excess Policy, and as a result Colony has no duty to defend or indemnify ASG or SIC against the claims raised in the Silica Suits.

## IX. COUNT FOUR – REQUEST FOR DECLARATORY RELIEF 19-20 TOTAL POLLUTION EXCLUSION

97. Colony incorporates by reference paragraphs 1-78 as if fully set forth herein.

98. Pursuant to the 19-20 Total Pollution Exclusion, coverage under the 19-20 Primary Policy does not apply to:

> "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

19-20 Primary Policy, CGL Coverage Part, Section I.2.f, as amended by the 19-20 Total Pollution Exclusion Endorsement.

99. The 19-20 Primary Policy defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." 19-20 Primary Policy, CGL Coverage Part, Section V.15.

100. The silica and toxic dust that was allegedly produced from the fabrication of ASG's products are a "pollutant" within the meaning of the 19-20 Primary Policy.

101. The injuries complained of in the Silica Suits would not have occurred but for the discharge, dispersal, seepage, migration, release or escape of that "pollutant."

102. No exception to the 19-20 Total Pollution Exclusion applies because there is no alleged "hostile fire" or alleged use of equipment to heat, cool or dehumidify the building, or used to heat water for personal use.

103. Therefore, the 19-20 Total Pollution Exclusion applies to bar all coverage under the 19-20 Primary Policy for the Silica Suits, and as a result Colony has no duty to defend or indemnify ASG or SIC against the claims raised in the Silica Suits.

## X. COUNT FIVE – REQUEST FOR DECLARATORY RELIEF 20-21 TOTAL POLLUTION EXCLUSION

104. Colony incorporates by reference paragraphs 1-78 as if fully set forth herein.

105. Pursuant to the 20-21 Total Pollution Exclusion, coverage under the 20-21 Primary Policy does not apply to:

> "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

20-21 Primary Policy, CGL Coverage Part, Section I.2.f, as amended by the 20-21 Total Pollution Exclusion Endorsement.

106. The 20-21 Primary Policy defines "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." 20-21 Primary Policy, CGL Coverage Part, Section V.15.

107. The silica and toxic dust that was allegedly produced from the fabrication of ASG's products are a "pollutant" within the meaning of the 20-21 Primary Policy.

108. The injuries complained of in the Silica Suits would not have occurred but for the discharge, dispersal, seepage, migration, release or escape of that "pollutant."

109. No exception to the 20-21 Primary Policy's Total Pollution Exclusion applies because there is no alleged "hostile fire" or alleged use of equipment to heat, cool or dehumidify the building, or used to heat water for personal use.

110. Therefore, the 20-21 Total Pollution Exclusion applies to bar all coverage under the 20-21 Primary Policy for the Silica Suits, and as a result Colony has no duty to defend or indemnify ASG or SIC against the claims raised in the Silica Suits.

## XI. COUNT SIX – REQUEST FOR DECLARATORY RELIEF EXCESS TOTAL POLLUTION EXCLUSION

111. Colony incorporates by reference paragraphs 1-78 as if fully set forth herein.

112. Pursuant to the Excess Total Pollution Exclusion, coverage under the Colony Excess Policy does not apply to:

> "Injury or damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

Colony Excess Policy, Section I.2.c, as amended by the Total Pollution Exclusion Endorsement.

113. The definition of "pollutants" in the 20-21 Primary Policy also applies to the Colony Excess Policy. *See* Colony Excess Policy, Colony Excess Coverage Form.

114. The silica and toxic dust that was allegedly produced from the fabrication of ASG's products are a pollutant within the meaning of the Colony Excess Policy.

115. To the extent the Silica Suits allege "injury or damage", such would not have occurred but for the discharge, dispersal, seepage, migration, release or escape of that pollutant.

116. No exception to the Excess Total Pollution Exclusion applies because there is no alleged hostile fire or alleged use of equipment to heat, cool or dehumidify the building, or used to heat water for personal use.

117. Therefore, the Excess Total Pollution Exclusion applies to bar all coverage under the Colony Excess Policy for the Silica Suits, and as a result Colony has no duty to defend or indemnify ASG or SIC against the claims raised in the Silica Suits.

## XII. RESERVATION TO AMEND

118. Colony reserves the right to amend this action as necessary and to include any additional claims that may be made.

## XIII. CONCLUSION & PRAYER

WHEREFORE, Colony Insurance Company respectfully moves this Court for entry of Declaratory Judgment in its favor as follows:

a) Declaring that the 19-20 Primary Silica Exclusion applies to bar coverage in its entirety under the 19-20 Primary Policy for the Silica Suits;

b) Declaring that the 20-21 Primary Silica Exclusion applies to bar coverage in its entirety under the 20-21 Primary Policy for the Silica Suits;

c) Declaring that the Excess Silica Exclusion applies to bar coverage in its entirety under the Colony Excess Policy for the Silica Suits;

d) Declaring that the 19-20 Primary Total Pollution Exclusion applies to bar coverage in its entirety under the 19-20 Primary Policy for the Silica Suits;

e) Declaring that the 20-21 Primary Total Pollution Exclusion applies to bar coverage in its entirety under the 20-21 Primary Policy for the Silica Suits;

f) Declaring that the Excess Total Pollution Exclusion applies to bar coverage in its entirety under the Colony Excess Policy for the Silica Suits;

g) Declaring that Colony owes no duty to defend or indemnify ASG or any other party under the Policies in connection with the Silica Suits; and

h) Awarding such further relief to which it is justly entitled.

Dated: September 2, 2026

Respectfully submitted,

*/s/ Stephen A. Melendi*

Stephen A. Melendi
Texas Bar No. 24041468
stephenm@tbmmlaw.com
Matt Rigney
Texas Bar No. 24068636
mattr@tbmmlaw.com
Tollefson Bradley Mitchell & Melendi, LLP
2811 McKinney Avenue, Suite 250 West
Dallas, Texas 75204
Telephone: 214-665-0100
Facsimile: 214-665-0199

**Lavin Rindner Duffield LLC**
Parker J. Lavin
(*pro hac vice* forthcoming)
plavin@lrd.law
Telephone: 912-266-8301

Brian M. Tarno
(*pro hac vice* forthcoming)
btarno@lrd.law
Telephone: 202-759-9638

**ATTORNEYS FOR PLAINTIFF COLONY INSURANCE COMPANY**